Feeeman, J.,
delivered tbe opinion of tbe Court.
Tbe bill is filed in tbis case by James Martin, to set aside a sale of tbe land mentioned in tbe pleadings, made by order of tbe County Court of Carroll county.
Tbe sale was decreed in said Court in order to partition, on tbe ground that it was manifestly to tbe interest of tbe parties, and complainant became tbe purchaser of one of tbe tracts of land so ordered to be sold.
He gave bis notes for payment of tbe purchase money, due. in one and two years from tbe date of tbe sale. Both of said notes bad matured before tbe filing of tbis bill, and judgment, on motion, bad been taken in favor of tbe commissioner who- sold tbe land, against complainant and bis sureties for tbe amount due on tbe same.
Tbe bill claims that' tbe sale ordered by tbe County Court of Carroll county was void, and alleges tbe following objections to tbe proceedings, as rendering them invalid.
1st. That several of tbe parties defendant, were minors, bad no regular guardian, and were not served with process or copy of tbe bill. If tbe fact was as alleged, tbe parties being residents of tbe State, as a matter of course tbe decree would be void as to tbe parties not served, and tbe purchaser- would get no title, as against them, and *410 would be entitled to have the purchase made by him declared void.
But on looking into the record we find that these parties were served. with process, October 5th, 1866, about one month before the decree of County Court was made ordering the sale. This appears by the return of the deputy sheriff of Carroll county. There is nothing in the record to contradict this return, even if complainant was in condition to dispute it, and we must take it to be true.
It is not alleged that the petition for the sale of the land- was not sworn to. There is nothing in this objection. No law of Tennessee requires such a petition to be sworn to, nor any rule of Chancery practice. It was but an ordinary bill or petition for partition, asking no extraordinary process, but only a sale of the lands mentioned in the petition, as being manifestly to the interest of the parties that said sale should be made.
It is insisted the petition was never filed in the County Court. The answers expressly deny this allegation, and the record shows that the- petition was filed in office of the County Court Clerk, and process regularly issued to the sheriff, commanding the parties to appear and answer it.
It is urged that no prosecution bond was taken by the Clerk. It would have been more - regular if he had done so, and parties defendant in the case might have objected for want of such bond, but complainant in this case had not the slightest in *411 terest in tbat question, nor can bis title under tbe sale be in any way affected by tbe want of a prosecution bond.
It is alleged tbat tbe order appointing tbe guardian ad litem is void, and communicated no authority to tbe guardian to answer, -because there was no affidavit tbat tbe parties were -minors and bad no regular guardian, and tbe case of Rucker v. Moore, 1 Heis., 726, is cited for this position. Tbe case cited was a proceeding under a different section of tbe Code, to wit:, sec. 2247, authorizing an administrator to file a petition for sale of slaves when necessary to payment of debts, tbe positive requirement of tbe statute being tbat “in all such cases be shall file bis bill or petition on oath, to obtain a decree for tbe sale of such slaves, and tbe suit so commenced shall be conducted as other suits in Chancery.” No such requirement is found in tbe statute on tbe subject of partition, as tbat the bill or. petition shall be sworn .to? nor has it ever been required in Tennessee, tbat in ordinary cases a bill shall be sworn to in order to the appointment of guardians ad litem. . Tbe fact tbat a minor is sued, and has no regular guardian, appearing on tbe face of the bill, is always sufficient ground on which tbe Court shall appoint some one to defend tbe suit for him: See 1 Daniel’s Ch. Pr., 150.
No inconvenience can arise to any one by such practice, as tbe minor must be in court by service of process or publication, before tbe appointment can properly be made. 'When this is done, it *412 becomes the duty of the Court to make the appointment. If it should so happen that the person supposed to be a minor is of full age when brought into court, as a matter of course he will make his own defense, and no guardian will be appointed for him.
The order appointing Towns guardian ad litem in this case is made by the Court, and recites, that it appearing to the satisfaction of the Court that defendants, naming them, are minors, and have no regular guardian, and that they have been duly served with process, etc., “it is, therefore, ordered that Henry C. Towns be and is hereby appointed guardian ad litem for the said minors.”
The Court having jurisdiction of the person of the parties, and the decree reciting the fact, that it appeared to the satisfaction of the Court that said parties are minors, we would presume that satisfactory evidence was presented of the fact, even if proof was necessary in case of appointment of guardian ad litem by the Court. It is true that the Clerk and Master is authorized to appoint guardians ad litem at his office, “upon its being made to appear by affidavit that infants sued have no regular guardian:” Code 4420, sub-sec. 4; but this regulation applies only to the practice before the Master. We know of no provision of the Code making such requirement, for the appointment when made by the Court.
We may add, that even if there was an irregularity in the appointment of a guardian ad litem, *413 as that he was not appointed upon an affidavit showing that there was no regular guardian, we should be slow to hold, the other proceedings being regular, that a purchaser could set aside the sale, or have his purchase rescinded for such irregularity, while the parties really interested, the minors, did not complain, and no injustice had been done them
It is said that the answer bears date November 5th, 1865, twelve months before the time of appointment. The date of affidavit is as stated, but at the commencement of the answer it is entitled November Term, 1866, and we can see that the date affixed to the affidavit is a clerical error.
It is insisted that the answer of the guardian ad litem was sworn to before a deputy clerk, and that he has no authority to perform this act. There is nothing in this. The power to appoint a deputy necessarily involves the idea that he shall act in the place of, and for the regular Clerk, and exercise the same powers; the acts of the deputy being the acts of the principal Clerk, by his lawfully appointed agent. Section 4050, sub-sec. 4 of Code, confers the power on a deputy to transact all the business of the principal Clerk.
These are all the allegations of the original bill, on which complainant insists, for setting aside the sale, and being released from his purchase.
An amended bill was filed in this case, the only allegations of which, necessary to be noticed, are:
*414 1st. That the order appointing the guardian ad litem was made at November Term, 1866, the answer filed at the same Term, and an order of reference to the Clerk as to the value of the land, and propriety of selling it, and proof taken at the same Term, and report made by the Clerk that sale was necessary, and. order of sale made on said report.
We can see no grounds on which complainant can object to this. The guardian ad litem was appointed, and had answered. It was his duty to protect the interest of his ward. We must assume that he did his duty. He asks no further time in which to take proof, nor. files any exception to the report of Clerk and Master. So far as we can see, he was as ready to have the interests of the parties adjudicated at this term as he would ever have been, and we can see no reason why, when the case was at issue, and proof taken, the Court should continue the case until another term, in order to a fair determination of the rights of the parties, especially as no continuance was asked, or objection made to the hearing at the time.
It is next alleged in said amended bill that no publication as to non-residents was ever made in the Paris Intelligencer as was ordered by the Court.
This allegation is expressly denied by defendants in their answer, and they say “a copy of which is filed, and made part of their answer,” by which we understand that a copy of the publication so made is filled with said answer. On looking at this pub *415 lication we see that it was regular on its face, and required the non-residents to appear at the November Term of tlie County Court, of Carroll county, and defend said suit.
On looking at tlie order of the Court, taking the petition for confessed, it recites the fact, “ that it appearing to the satisfaction of the Court that publication has been duly made of the pendency of this suit in the Intelligencer,” etc.
This decree, like any other decree of a court having jurisdiction of the subject matter, must be taken, to speak the truth, at any rate, until the contrary appears.
It is assumed in argument, that the fact of publication is to be made to appear, by production of the paper containing the publication, or affidavit of the printer. "While this is a mode of procuring this fact pointed out by the Code, yet, if it was to be held as the only mode of proof of the fact, still it could have no application to this case. It is only applicable to the mode of showing the fact to the court in which the case is pending, during the progress of the cause. Here, however, the complainant has alleged, as a fact on which 'he seeks the relief in his bill, that no such publication was had. Although the allegation is negative in form, there is no difficulty in his making the proof, if the fact is as alleged, by deposition of the printer or publisher of the paper, or by the clei’k of the court, who would know whether he sent the order to the paper. As the fact is *416 charged and denied, the complainant, before be can ask the Court to give bim the relief sought, must prove the allegation to be true.
The last allegation of the amended bill', which we notice is, that “the proof in said cause was insufficient on which to have based a decree of sale.”
The general rule is, that where the court pronouncing the decree has jurisdiction of the parties, and the subject matter, the correctness of the conclusion from the evidence, at which the court has arrived in its decree, cannot be inquired into when such proceeding shall be brought forward, in a collateral proceeding; and whether the court made its decree without any proof, or upon proof illegally taken, are matters which cannot be inquired into by another court of concurrent jurisdiction, but only by a revising court, on appeal or writ of error, or in proper case, perhaps, on bill of review, where the decree is made by a Court of Chancery: 4 Sneed, 380; 2 Meigs’ Dig., § 1171. It would seem, however, that a case like the one before us, may be an apparent exception to this rule, from some of the decisions of this Court on the question. In the case of Davidson et als. v. Bowden et als., 5 Sneed, 132, Judge McKinney delivering the opinion of the Court, where a bill was filed by a purchaser, to be discharged from his purchase on the ground of irregularities in the proceedings under which the property was sold, says, in pronoun *417 cing the sale void, “There is not a tittle of proof in the record to establish the allegation of the petition, and ‘by the express words of the Act of 1827, satisfactory proof of one or the other grounds for sale given in the statute-,’ is requisite to clothe the court with jurisdiction under the statute.” He then goes on to lay down the rule, as to what amount and character of proof, would be satisfactory. It is probable, that by the word jurisdiction, the learned judge meant simply to declare that the court would not be authorized, as a matter of law, to make the decree of sale without' such proof, not that jurisdiction in the case was depend-ant upon the amount of proof the party might adduce in support of the case made by the pleadings.
He, however, goes on to show, that the proof on which the sale was decreed was insufficient and incompetent, and that the report of the. Clerk and Master, based on such evidence, on which the Court acted, was insufficient, and then to decree the consequence to be, that the sale was utterly void. This view of the case, as an exception to the general rule, may probably be sustained, on the ground that the basis of a bill of this kind is, that the sale being void, as to the parties to the original suit, or the decree such a one as did not divest the title of the land out of said parties, or one that the parties might avoid, upon proceedings instituted by them for the purpose; under the well-settled *418 rule of a Court of Chancery, that a purchaser will not be compelled to take a doubtful title: Cunningham v. Sharp, 11 Hum., 118; a party might come into a court of equity to have the sale rescinded.- It is conceded by the counsel who argued this case, that if the proof was insufficient, the defendants might, on writ of error, or other proper proceeding, -have the decree ordering' the-sale reversed and set aside; and if so, in this view of the case, we may well look into the evidence referred to-.
The rule as to setting aside sales of land, is thus laid • down by Mr. Sugden on Vendors, as cited in . the above case, -page 119-: “ That if any person has an interest in or claim upon the estate, which he may enforce,' a purchaser cannot be compelled to take the estate, however improbable it may be that the right will be exeróised:” 2 Sugd. on Vend., 6th Am. ed., top page 124.
We need not, however, go further into the authorities on this branch of -the case, as we are satisfied from- the proof in the record, that the County Court was warranted in making the sale of the land on the evidence presented.
The witnesses not only gave their opinions, that a partition could not be advantageously made between the parties, but they gave a sound reason for such opinion, that the land lay in separate tracts, parts of which were poor and hilly, and that some of the shares of the heirs would be nearly worthless.
*419 Tbe court could well say in such, a case, tbat it would be to the interest of the parties, in order to partition, that the land should be sold, and each receive his or her share in the proceeds, which being in money, would be of precisely the same value • to each party in- interest.
We need not discuss other questions debated, before us on the hearing, as we are satisfied of the correctness of the decree of his Honor, the Chancellor, and affirm the same.
The complainant, and his surety in the injunction bond, will have- a decree entered here against them for the amount of the judgments, and the cost will be paid by complainant and his surety for the prosecution of his suit in the. court below, and on the bond for the writ of error in this court.